IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WIND TOWER TRADE COALITION**<br><br>             **Plaintiff,**<br>      v.<br>**UNITED STATES,**<br><br>             **Defendant.** | Before: Hon. _____,<br>             Judge<br><br>Court No. 25-000104 |

### COMPLAINT

Plaintiff, the Wind Tower Trade Coalition ("Plaintiff") or ("Coalition"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1.      The Coalition brings this Complaint to contest portions of the final results issued by the U.S. Department of Commerce ("Commerce") in the 2022-2023 administrative review of the antidumping duty order on certain utility scale wind towers from the Republic of Korea. The final results were issued on May 2, 2025 and were published in the *Federal Register* on May 9, 2025. *See Utility Scale Wind Towers From the Republic of Korea*, 90 Fed. Reg. 19,672 (Dep't Commerce May 9, 2025) (final results of antidumping duty admin. rev.; 2022-2023) ("Final Results") and accompanying Issues and Decision Memorandum ("Final Decision Memo").

### JURISDICTION

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii).

## STANDING

3. The Coalition an association of domestic utility scale wind tower producers and therefore is an interested party within the meaning of 19 U.S.C. § 1677(9)(E). Plaintiff was the petitioner in Commerce's underlying antidumping duty investigation and actively participated in the administrative review underlying this appeal. Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4. The Coalition commenced this action by filing a Summons on June 9, 2025, within 30 days after the publication of the Final Results in the *Federal Register*. Summons (June 9, 2025), ECF No. 1. The Coalition is filing this Complaint within 30 days after filing the Summons. The Summons and Complaint, therefore, are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5. On October 18, 2023, Commerce initiated the administrative review subject to this Complaint, covering the period of review of August 1 2022 through July 31, 2023. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 71,829, 71,831-32 (Dep't Commerce Oct. 18, 2023). Commerce selected Dongkuk S&C Co., Ltd. ("Dongkuk") as the mandatory respondent. *Utility Scale Wind Towers From the Republic of Korea*, 89 Fed. Reg. 74,880, 74,881 (Dep't Commerce Sept. 13, 2024) (prelim. results and rescission of rev., in part, of antidumping duty admin. rev.; 2022-2023).

### Conversion Costs

6. On January 10, 2024, Dongkuk submitted its response to Section D of Commerce's initial questionnaire. *See* Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Utility Scale*

Ct. No. 25-00104

*Wind Towers from the Republic of Korea – DKSC's Section B, C, and D Questionnaire Responses* (Jan. 10, 2024). In its response, Dongkuk reported the product characteristics for the wind towers sold during the review period, as well as project-specific costs. *Id.* at D-2. These costs included indirect costs, or conversion costs, that Dongkuk incurred for converting steel plates and other minor inputs into a wind tower. *See id.* at D-13. These costs were "allocated to each production process based on the allocation basis set by the nature of accounts and then subsequently allocated to each project based on the production quantity." *Id.*

7. On March 21, 2024, the Coalition filed comments in response to Dongkuk's initial Section D response. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from the Republic of Korea: Comments on Dongkuk's Initial Questionnaire Responses* (Mar. 21, 2025). The Coalition provided an analysis of Dongkuk's reported conversion costs that demonstrated that the per-section conversion costs deviated significantly between the CONNUMs. *See id.* at 2-7, Exhibit 1. This analysis mirrored Commerce's analysis in a previous antidumping duty investigation, *Utility Scale Wind Towers from Indonesia*, where Commerce acknowledged that conversion costs specific to each type of tower were unrelated to the physical characteristics of the products. *Id.* at 4 (citing *Utility Scale Wind Towers from Indonesia*, 85 Fed. Reg. 40,231 (Dep't Commerce July 6, 2020) (final deter. of sales at less than fair value and final neg. deter. of critical circumstances) and accompanying Issues and Decision Memorandum at cmt. 5). The Coalition's analysis adjusted Dongkuk's conversion costs to correct for the significant variations unrelated to the physical characteristics of the merchandise—the same adjustment the agency made in *Utility Scale Wind Towers from Indonesia*. *See id.* at 4, Exhibit 1.

8. On July 12, 2024, Commerce issued Dongkuk a supplemental questionnaire regarding the company's Section D questionnaire response. *See* Letter from Whitley Herndon,

Program Manager, AD/CVD Operations, Off. IX, Enf't & Compl., to Dongkuk S&C Co., Ltd., re: *2022-2023 Administrative Review of the Antidumping Duty Order on Utility Scale Wind Towers from the Republic of Korea: Supplemental Questionnaire* (July 12, 2024). Commerce asked Dongkuk to clarify numerous issues but did not ask any questions about Dongkuk's conversion costs. *See generally id.*

9. In anticipation of the preliminary results, the Coalition again provided comments highlighting the variations in Dongkuk's conversion costs on a per-section basis. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from the Republic of Korea: Petitioner's Pre-Preliminary Comments* (Aug. 15, 2024) at 2-7. The Coalition set out the applicable statutory standard that Commerce relies on costs that "reasonably reflect the costs associated with the production and sale of the merchandise," *id.* at 2 (quoting 19 U.S.C. § 1677b(f)(1)(A)), and reiterated that Commerce's practice is to adjust costs where cost differences reflect factors other than the physical characteristics of the merchandise. *Id.*

10. Dongkuk provided rebuttal comments, explaining that its "indirect costs are akin to fixed costs that are not impacted by differences in product characteristics." Letter from Trade Pacific PLLC to Sec'y Commerce, re *Utility Scale Wind Towers from the Republic of Korea – Response to the Petitioner's Pre-Prelimianry Comments* (Aug. 26, 2024) at 2 ("Dongkuk Pre-Prelim Cmts."). Dongkuk also explained that its allocation method meant that "projects produced in high-production quantity months typically would have lower indirect costs because the costs are allocated over a greater denominator; whereas projects produced in lower-production quantity months typically would have higher indirect costs because of the smaller denominator." *Id.* at 2-3.

11. Commerce issued its preliminary decision without addressing the Coalition's proposed cost correction but appeared to decline to adopt the corrective methodology. *See*

generally *Utility Scale Wind Towers from the Republic of Korea*, 89 Fed. Reg. 74,880 (Dep't Commerce Sept. 12, 2024) (prelim. results and rescission of rev., in part, of antidumping duty admin. rev,; 2022-2023) and accompanying Issues and Decision Memorandum ("Preliminary Decision Memorandum"); Letter from Adam Simons, Sr. Int'l Trade Analyst, AD/CVD Operations, Off. IX, Enf't & Compl., to The File, re: *2022-2023 Antidumping Duty Administrative Review of Utility Scale Wind Towers from the Republic of Korea: Preliminary Results Margin Calculation for Dongkuk S&C Co., Ltd.* (Sept. 6, 2024).

12. The Coalition again raised the issue of conversion costs in its case brief, providing an analysis of Dongkuk's conversion costs and sampling coding language for the conversion cost adjustments. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from the Republic of Korea: Case Brief* (Jan. 22, 2025) at 18-21 ("WTTC Case Brief"). The Coalition also provided additional explanation demonstrating that Dongkuk's per-section conversion costs were not tied to the physical characteristics of its towers, as expressed in each tower's control number ("CONNUM"). *Id.* at 21-28.

13. In the Final Results, Commerce declined to adopt the Coalition's corrective methodology. *See* Final Decision Memo at cmt. 2. Commerce's decision rested on its conclusions regarding conversion costs for CONNUMS with the same number of sections. *Id.* Commerce reasoned that "towers with the same number of sections would have a similar production quantities {sic} and, therefore, similar conversion costs" because Dongkuk allocated conversion costs based on monthly production quantities, *id.*, despite Dongkuk's claim that indirect costs "are not impacted by differences in product characteristics." Dongkuk Pre-Prelim Cmts. at 2. Commerce then analyzed conversion costs among CONNUMs with the same number of sections, concluding

5

that this analysis demonstrated that Dongkuk's conversion costs primarily reflected physical wind tower characteristics, rather than monthly production quantities. Final Decision Memo at cmt. 2.

## Constructed Value

14. On August 7, 2024, the Coalition placed on the record information for use in calculating constructed value ("CV") profit and selling expenses in the event that Commerce was unable to base normal value on Dongkuk's own home market or third country sales. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from the Republic of Korea: Constructed Value Profit and Selling Expense Comments and Information* (Aug. 7, 2024) at 1-2. This information included the financial statements of Husteel Co., Ltd. ("Husteel"), a Korean pipe producer. *Id.* at Exhibit NFI-1. Dongkuk requested that Commerce reject this information as untimely. *See* Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Utility Scale Wind Towers from the Republic of Korea – Request to Reject Petitioner's August 7th Factual Submission* (Aug. 9, 2024).

15. On August 16, 2024, Commerce provided interested parties an opportunity to provide information necessary to calculate CV profit and selling expenses. *See* Letter from Whitley Herndon, Program Manager, AD/CVD Operations, Off. IX, Enf't & Compl., to All Interested Parties, re: *2022-2023 Antidumping Duty Administrative Review of Utility Scale Wind Towers from the Republic of Korea: Request for Constructed Value Profit and Selling Expense Comments and Information* (Aug. 16, 2024). Commerce also indicated it would accept the Coalition's previously submitted CV information. *See* Letter from Anne Entz, Int'l Trade Compl. Analyst, AD/CVD Operations, Off. IX, to The File, re: *2022-2023 Antidumping Administrative Review of Utility Scale Wind Towers from the Republic of Korea: Response to Dongkuk's Request to Reject New Factual Information* (Aug. 16, 2024).

16.	In response, the Coalition provided the 2023 financial information of SeAH Steel Holdings Corporation ("SeAH"), a Korean steel pipe producer, in addition to the Husteel information the Coalition previously provided. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from the Republic of Korea: Constructed Value Profit and Selling Expense Comments and Information* (Aug. 23, 2024). Dongkuk provided several sources of CV information, including its own CV profit and selling expense ratio from the previous review. *See* Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Utility Scale Wind Towers from the Republic of Korea – CV Profit and Selling Expense Comments and Information* (Aug. 23, 2024) at 3. The Coalition provided rebuttal comments explaining why Dongkuk's prior CV ratios were not an appropriate basis for CV ratios in the present review. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from the Republic of Korea: Rebuttal Constructed Value Profit and Selling Expense Comments and Information* (Aug. 30, 2024) at 3-4.

17.	In the preliminary results, Commerce found that "there were no above-cost comparison market sales prices" and disregarded all of Dongkuk's comparison market sales. Preliminary Decision Memorandum at 10. As a result, Commerce based normal value on CV. *Id.* Commerce based CV profit and selling expenses on Dongkuk's CV profit and selling expense ratios from the previous proceeding. *Id.*

18.	In its case brief, the Coalition argued that Commerce incorrectly relied on Dongkuk's non-contemporaneous CV ratios and that Commerce should have used the financial statements of Husteel or SeAH as the basis for CV ratios. *See* WTTC Case Brief at 2-18. Specifically, the Coalition explained that Commerce misinterpreted the alternative methods for determining CV ratios set out in 19 U.S.C. § 1677b(e)(2)(B) by analyzing Dongkuk's information under subsection (i) rather than subsection (iii). *See id.* at 4-7. Moreover, the Coalition explained

7

Ct. No. 25-00104

that Dongkuk's CV ratios from the previous review were unrepresentative, distortive, unprofitable, and non-contemporaneous and that selecting this source as the basis for CV ratios was inconsistent with the statute and previous Commerce and court decisions. *Id.* at 10.

19. In the final results, Commerce continued to base CV profit and selling expenses on Dongkuk's prior-POR ratios. Final Decision Memo at cmt. 1. While Commerce acknowledged that Dongkuk was unprofitable during the prior review, it nevertheless used Dongkuk's information because of the presence of individual profitable sales. *Id.* at 6-7. Commerce also dismissed the lack of contemporaneity and the low volume of the sales underlying the CV ratios. *Id.* at 5-7.

## CLAIMS AND BASES FOR RELIEF

### Count I

20. The Coalition hereby realleges and incorporates by reference paragraphs 1 through 19.

21. Commerce's failure to correct for Dongkuk's conversions costs, which were unrelated to the physical characteristics of the subject merchandise, is not supported by substantial evidence, is inadequately explained, and is otherwise contrary to law, namely 19 U.S.C. § 1677b(f)(1)(A) and relevant court and agency precedents.

### Count II

22. The Coalition hereby realleges and incorporates by reference paragraphs 1 through 21.

23. Commerce's decision to rely on Dongkuk's information from a previous review as the basis for constructed value ratios is not supported by substantial evidence, is inadequately explained, and is otherwise contrary to law.

Ct. No. 25-00104

## REQUEST FOR JUDGMENT AND RELIEF

For the reasons stated in this Complaint, the Coalition respectfully requests that the Court:

(1)    Hold that Commerce's Final Results in the 2022-2023 antidumping duty administrative review of *Utility Scale Wind Towers from Korea* are not supported by substantial evidence on the record, are inadequately explained, and are otherwise not in accordance with law; and

(2)    Remand the Final Results to Commerce for disposition consistent with the Court's final opinion.

                                            Respectfully submitted,

                                            */s/ Laura El-Sabaawi*
                                            Alan H. Price, Esq.
                                            Robert E. DeFrancesco, III, Esq.
                                            Maureen E. Thorson, Esq.
                                            Laura El-Sabaawi, Esq.
                                            John Allen Riggins, Esq.

                                            **WILEY REIN LLP**
                                            2050 M Street, NW
                                            Washington, DC 20036
                                            (202) 719-7000

                                            *Counsel for the Wind Tower Trade Coalition*

Dated: July 9, 2025

# CERTIFICATE OF SERVICE

PUBLIC SERVICE

*Wind Tower Trade Coalition v. United States*
**Court No. 25-00104**

I certify that a copy of this public submission was served on the following parties, via certified mail and electronic service, on July 9, 2025.

/s/ *John Allen Riggins*
John Allen Riggins, Esq.

Jarrod M. Goldfeder, Esq.
**Trade Pacific PLLC**
700 Pennsylvania Ave., SE
Suite 500
Washington, DC 20003

General Counsel
**U.S. Department of Commerce**
14th Street and Constitution Ave., NW
Washington, DC 20230

Jaehong David Park, Esq.
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., NW
Washington, DC 20001

Attorney in Charge
International Trade Field Office
**Department of Justice, Civil Division**
Room 346, Third Floor
26 Federal Plaza
New York, NY 10278

Supervising Attorney
Civil Division – Commercial Litigation Branch
**U.S. Department of Justice**
P.O. Box 480
Ben Franklin Station
Washington, DC 20044