## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| WIND TOWER TRADE COALITION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>Defendant, )<br>)<br>and )<br>)<br>DONGKUK S&C CO. LTD., )<br>)<br>Defendant-Intervenor. )<br>) | Before: Hon. Leo M. Gordon,<br>Senior Judge<br><br>Court No. 25-00104 |

### ORDER

Upon consideration of Plaintiff's motion for judgment on the agency record, Defendant and Defendant Intervenor's responses, and all other papers and proceedings herein; it is hereby:

**ORDERED** that Plaintiff's motion is denied; and it is further

**ORDERED** that the final results with respect to <u>Utility Scale Wind Towers from the Republic of Korea</u>, 90 Fed. Reg. 19,672 (Dep't Commerce May 9, 2025), are hereby affirmed.

By: _____
     Leo M. Gordon, Judge

Dated: _____

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WIND TOWER TRADE COALITION, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) Before: Hon. Leo M. Gordon, <br> ) Senior Judge <br> v. ) <br> ) Court No. 25-00104 <br> UNITED STATES, ) <br> ) <br> Defendant, ) Confidential Information <br> ) Subject to Judicial Protective <br> and ) Order Has Been Deleted on <br> ) Pages 2, 3, 7, and 12 <br> ) <br> DONGKUK S&C CO. LTD., ) **Non-Confidential Version** <br> ) <br> ) <br> Defendant-Intervenor. ) <br> ) | |

RESPONSE OF
DONGKUK S&C CO., LTD. IN OPPOSITION TO PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

 

Jarrod M. Goldfeder
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C. 20003
(202) 223-3760

Dated: March 9, 2026            *Counsel to Dongkuk S&C Co., Ltd.*
                                                                          *Defendant-Intervenor*

Case 1:25-cv-00104-LMG   Document 30   Filed 03/09/26   Page 3 of 19

Consol. Court No. 25-00104                                    Non-Confidential Version

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

I.   RULE 56.2 STATEMENT ................................................................................... 1

II.  STANDARD OF REVIEW .................................................................................. 2

III. ARGUMENT ........................................................................................................ 2

     A.   PLAINTIFF FAILS TO PROVIDE ANY LEGAL OR FACTUAL BASIS WHY COMMERCE'S DETERMINATION NOT TO ADJUST DKSC'S CONVERSION COSTS SHOULD BE REMANDED .......................................... 2

          1.   DKSC's Conversion Cost Reporting Methodology Was Reasonable Given Substantial Evidence on the Record ............................................................. 3

          2.   DKSC's Conversion Costs Reasonably Reflect Costs Associated with the Production of Wind Towers ........................................................................... 5

     B.   PLAINTIFF FAILS TO PROVIDE ANY LEGAL OR FACTUAL BASIS WHY COMMERCE'S DETERMINATION TO RELY ON DKSC'S CV PROFIT RATIO SHOULD BE REMANDED ....................................................... 9

IV.  CONCLUSION ................................................................................................... 13

Case 1:25-cv-00104-LMG   Document 30   Filed 03/09/26   Page 4 of 19

Consol. Court No. 25-00104                                    Non-Confidential Version

# TABLE OF AUTHORITIES

### *Statutes*

19 U.S.C. § 1677b(e)(2)(B)(i) ............................................................................................. 9-10

19 U.S.C. § 1677b(e)(2)(B)(ii) ................................................................................................10

19 U.S.C. § 1677b(e)(2)(B)(iii) ......................................................................................2, 9, 13

19 U.S.C. § 1677b(f)(1)(A) ..............................................................................................2, 5, 6

### *Court Precedent*

Atar S.R.L. v. United States, 730 F.3d 1320 (Fed. Cir. 2013) ...................................................12

Building Systems de Mexico, S.A. de C.V. v. United States, 609 F.Supp.3d 1369
(Ct. Int'l Trade 2022) ...............................................................................................................12

Home Products International, Inc. v. United States, 33 C.I.T. 1781, 675 F.Supp.2d 1192
(2009) .......................................................................................................................................13

Husteel Co., Ltd. v. United States, 471 F.Supp.3d 1349 (Ct. Int'l Trade 2020) .........................10

SeAH Steel Corporation v. United States, 513 F.Supp.3d 1367 (Ct. Int'l Trade 2021) ...............10

### *Agency Determinations*

Carbon and Alloy Steel Threaded Rod from India, 88 Fed. Reg. 75,265 (Dep't Commerce Nov. 2, 2023) (final results 2021-22 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce Oct. 26, 2023) ..............................................................................8

Certain Oil Country Tubular Goods from the Republic of Korea, 83 Fed. Reg. 17,146 (Apr. 18, 2018) (final results 2015-16 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce Apr. 11, 2018) ................................................................. 10-11

Certain Steel Nails from Malaysia, 80 Fed. Reg. 28,969 (Dep't Commerce May 20, 2015) (final determ.), and accompanying Issues and Decision Memorandum (Dep't Commerce May 13, 2015) ..............................................................................................................................8

Dioctyl Terephthalate from the Republic of Korea, 82 Fed. Reg. 28,824 (Dep't Commerce June 26, 2017) (final determ.), and accompanying Issues and Decision Memorandum (Dep't Commerce June 19, 2017) ...............................................................................................8

Case 1:25-cv-00104-LMG   Document 30   Filed 03/09/26   Page 5 of 19

**Consol. Court No. 25-00104**                                      **Non-Confidential Version**

Magnesium Metal from the Russian Federation, 76 Fed. Reg. 56,396 (Dep't Commerce Sept. 13, 2011) ) (final results 2009-10 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce Sept. 6, 2011) ...........................................................................11

Utility Scale Wind Towers from the Republic of Korea, 90 Fed. Reg. 19,672 (Dep't Commerce May 9, 2025), and accompanying Issues and Decision Memorandum (Dep't Commerce May 2, 2025) ................................................................................................................... *passim*

Utility Scale Wind Towers from the Republic of Korea, 89 Fed. Reg. 16,544 (Dep't Commerce Mar. 7, 2024) (final results 2021-22 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce Mar. 1, 2024) .............................................................................3

Utility Scale Wind Towers from the Republic of Korea, 88 Fed. Reg. 13,428 (Dep't Commerce Mar. 3, 2023) (final results 2020-21 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce Feb. 27, 2023) .............................................................................3

Utility Scale Wind Towers from the Republic of Korea, 85 Fed. Reg. 40,243 (Dep't Commerce July 6, 2020) (final determ.), and accompanying Issues and Decision Memorandum (Dep't Commerce June 29, 2020) ......................................................................................................3

Welded Line Pipe from the Republic of Korea, 84 Fed. Reg. 27,762 (Dep't Commerce June 14, 2019) (final results 2016-17 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce June 7, 2019) ................................................................... 12-13

**Consol. Court No. 25-00104**                                                                              **Non-Confidential Version**

# RESPONSE OF
# DONGKUK S&C CO., LTD. IN OPPOSITION TO PLAINTIFF'S
# RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to the Court's January 6, 2026, Amended Scheduling Order, ECF No. 26, Dongkuk S&C Co., Ltd. (hereinafter, "DKSC"), defendant-intervenor in this action, responds to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record. See ECF No. 22 (Nov. 10, 2025) ("Pl. Br."). DKSC supplements and supports the arguments that Defendant made in its Response in Opposition to Plaintiff's Motion for Judgment on the Agency Record. See ECF No. 27 (Feb. 9, 2026) ("Def. Br.").

## I.     RULE 56.2 STATEMENT

Plaintiff challenges the U.S. Department of Commerce's final results in the 2022-2023 administrative review of the antidumping duty order on Utility Scale Wind Towers from the Republic of Korea, 90 Fed. Reg. 19,672 (Dep't Commerce May 9, 2025) ("Final Results"), PD 120, and accompanying Issues and Decision Memorandum (Dep't Commerce May 2, 2025) ("Decision Memo"), PD 118. Plaintiff raises two issues on appeal: (1) whether Commerce's decision not to adjust DKSC's reported conversion costs is supported by substantial evidence and in accordance with law; and (2) whether Commerce's decision to calculate constructed value ("CV") profit and selling expenses using DKSC's own financial data from the preceding administrative review is supported by substantial evidence and in accordance with law.

For the reasons explained below, Commerce's decision to use DKSC's actual reported conversion costs and to calculate CV profit and selling expenses using DKSC's own financial data were reasonable, supported by substantial evidence, and in accordance with law.

1

Case 1:25-cv-00104-LMG   Document 30   Filed 03/09/26   Page 7 of 19

Consol. Court No. 25-00104                                    Non-Confidential Version

## II.   STANDARD OF REVIEW

DKSC incorporates by reference the standard of review provided by Defendant, the United States.  See Def. Br., at 15–16.

## III.   ARGUMENT

DKSC incorporates by reference the arguments that Defendant made in its response brief.  Specifically, DKSC agrees that Commerce reasonably and lawfully:  (1) determined that DKSC's conversion costs were related to the physical characteristics of the subject merchandise in accordance with 19 U.S.C. § 1677b(f)(1)(A) such that no adjustments for differences in conversion costs were warranted; and (2) selected DKSC's own data for home market sales made in the ordinary course of trade from the prior administrative review, in accordance with 19 U.S.C. § 1677b(e)(2)(B)(iii), for purposes of the CV profit and selling expense ratio calculation.  To prevent redundancy of arguments, DKSC supplements Defendant's briefing to address additional critical aspects of the underlying record that Plaintiff failed to acknowledge.

### A.   **PLAINTIFF FAILS TO PROVIDE ANY LEGAL OR FACTUAL BASIS WHY COMMERCE'S DETERMINATION NOT TO ADJUST DKSC'S CONVERSION COSTS SHOULD BE REMANDED**

Plaintiff alleges that Commerce erred in not adjusting DKSC's reported conversion costs because such costs did not "reasonably reflect the costs associated with the production and sale of the merchandise."  Pl. Br., at 3, citing 19 U.S.C. § 1677b(f)(1)(A).  However, a careful review of DKSC's conversion cost reporting methodology demonstrates that Commerce's decision to rely upon DKSC's actual reported conversion costs—which comprised a mere **[    ]** percent of its total cost of manufacturing ("COM")—without any adjustment was reasonably, supported by substantial evidence, and in accordance with 19 U.S.C. § 1677b(f)(1)(A).  See

Case 1:25-cv-00104-LMG   Document 30   Filed 03/09/26   Page 8 of 19

Consol. Court No. 25-00104                                          Non-Confidential Version

DKSC's Sections B, C, and D Questionnaire Responses (Jan. 10, 2024) ("Initial BCD Resp."), at D-13, CD 11, PD 36.

### 1. DKSC's Conversion Cost Reporting Methodology Was Reasonable Given Substantial Evidence on the Record

Since the original investigation of the underlying proceeding, DKSC has reported its COM on a project-specific basis, which Commerce has reviewed and consistently accepted. See Utility Scale Wind Towers from the Republic of Korea, 85 Fed. Reg. 40,243 (Dep't Commerce July 6, 2020) (final determ.), and accompanying Issues and Decision Memorandum (Dep't Commerce June 29, 2020), at cmt.7; see also Utility Scale Wind Towers from the Republic of Korea, 88 Fed. Reg. 13,428 (Dep't Commerce Mar. 3, 2023) (final results 2020-21 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce Feb. 27, 2023), at cmt. 3; Utility Scale Wind Towers from the Republic of Korea, 89 Fed. Reg. 16,544 (Dep't Commerce Mar. 7, 2024) (final results 2021-22 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce Mar. 1, 2024), at cmt. 3.

Because wind towers are produced through unique, customer-designed projects, DKSC's cost accounting system tracks all activities on a project-specific basis. See Letter from DKSC, "Notification of Home Market Viability and Cost Reporting Methodology" (Nov. 29, 2023), PD 22. Raw material and other material costs incurred are directly traceable to individual projects because DKSC procures materials according to its customers' requirements once it confirms the specifications of the wind tower project. Id.; see also Initial BCD Resp., at D-13 to D-14, CD 11, PD 36. Such materials are referred to as "direct costs." Direct material costs, as well as the direct portion of variable overhead costs linked to specific projects, comprised approximately [ ] percent of DKSC's total COM. See Initial BCD Resp., at D-13, CD 11, PD 36.

3

Case 1:25-cv-00104-LMG   Document 30   Filed 03/09/26   Page 9 of 19

**Consol. Court No. 25-00104**                                        Non-Confidential Version

DKSC's conversion costs consist of direct labor, variable overhead, and fixed overhead. The variable overhead reported in the "VOH" field of the cost database consisted of both direct costs and indirect costs. Id., at D-13, Exhibits D-13 and D-14, CD 11-12, PD 36. Direct VOH is directly traceable and assigned to specific projects; whereas, indirect VOH is comprised of common costs that are not directly related to certain projects. The latter costs were spread across all projects according to the allocation basis set according to the nature of accounts. Id., at D-13. DKSC demonstrated that it normally determines the indirect costs each month through its monthly manufacturing cost statements. Id., at Exhibits D-13 and D-14. Once DKSC determined the total direct or indirect conversion costs for each project, DKSC then divided each respective cost component by the production quantities (reflecting the amount of work performed) in order to state each cost field on a per-unit basis in accordance with Commerce's questionnaire reporting requirements. Id., at D-13, Exhibits D-13 and D-14, CD 11-12, PD 36.

As further support, DKSC provided a worksheet illustrating how the unit conversion costs change for the same project from month to month, depending on the monthly production quantity. See DKSC's Supplemental Section D Questionnaire Response (Aug. 7, 2024) ("Supp. QR Resp."), at SD-22 and Exhibit SD-32, CD 28, 31, PD 55.

Commerce reasonably concluded, after a careful and thorough examination of the underlying record evidence, that DKSC's "reporting of its conversion costs in this review is appropriate, " its "conversion costs are reasonably consistent across wind towers that share the same number of sections," and its "reported per-unit conversion costs generally reflect the differences in the number of wind tower sections in each tower." Decision Memo, at 12-13. As such, remand is not warranted because Commerce's determination was fully and reasonably articulated and supported by substantial record evidence.

Case 1:25-cv-00104-LMG   Document 30   Filed 03/09/26   Page 10 of 19

Consol. Court No. 25-00104                                       Non-Confidential Version

## 2. DKSC's Conversion Costs Reasonably Reflect Costs Associated with the Production of Wind Towers

Plaintiff wrongly contends that Commerce should have adjusted DKSC's reported conversion costs—i.e., direct labor and indirect costs—because they are not attributable to differences in physical characteristics of the finished wind towers. See Pl. Br., at 4–5. By asserting that these conversion costs are not related to differences in the physical characteristics of the finished merchandise, Plaintiff misconstrues Commerce's practice on adjusting costs and fails to consider basic concepts of manufacturing and accounting. Moreover, Plaintiff's suggestion that DKSC's conversion cost reporting somehow "distorted" the AD duty calculations, id., at 4, is based on an isolated, self-serving analysis that has no probative value because it fails to consider all eleven enumerated CONNUM characteristics.

For purposes of this underlying proceeding, Commerce designated eleven physical characteristics that it uses for purposes of constructing each unique matching "control number" (or "CONNUM") that forms the basis for how it performs the AD duty calculations, including type (tower vs. section), weight, and height in the first three positions. See Initial BCD Resp., at B-10 to B-18, CD 9, PD 34. Because wind towers are all unique, customer designed projects, each tower can vary significantly in weight, height, or type of product. Accordingly, these first three CONNUM characteristics carry the most significance, as Commerce reasonably concluded. See Decision Memo, at 11.

Under 19 U.S.C. § 1677b(f)(1)(A), costs shall normally be calculated based on the records of the exporter or producer of the merchandise, if such records are: (1) kept in accordance with the generally accepted accounting principles of the exporting country; and (2) reasonably reflect the costs associated with the production of and sale of the merchandise.

5

Case 1:25-cv-00104-LMG    Document 30    Filed 03/09/26    Page 11 of 19

Consol. Court No. 25-00104                                           Non-Confidential Version

Commerce reasonably concluded, based on substantial record evidence, that DKSC's conversion cost reporting satisfied both requirements. See Decision Memo, at 11.

Plaintiff claims that DKSC's conversion costs have nothing to do with "the physical characteristics of the wind towers being produced." Pl. Br., at 5. Plaintiff thus is suggesting that conversion costs bear no relationship to the CONNUM characteristics and should not have been reported on a project-specific basis. But the conversion costs that DKSC reported inherently related to the production of merchandise and were attributable to the finished product's physical characteristics. Wind towers, or any product for that matter, cannot be produced in a vacuum. Every manufacturer incurs costs related to labor and overhead. Labor costs must be incurred to produce each wind tower section; electricity bills and rent, among many others, must be paid to ensure flange assembly, welding, bending, cutting, and inspection can occur. Plaintiff's contentions to the contrary have no factual basis and are nonsensical.

Indeed, if 19 U.S.C. § 1677b(f)(1)(A) is to be read and applied in the manner that Plaintiff proposes, then Commerce arguably should adjust producers' conversion costs in each case, which would render a producer's actual books and records irrelevant. This would further result in far more distortive margin results. Commerce reasonably refrained from doing so here.

DKSC used actual manufacturing costs from its accounting system to calculate the per-unit direct labor, variable overhead, and fixed overhead reported for each project. See Initial BCD Resp., at D-13 to D-14, CD 11, PD 36. DKSC's reported conversion costs are directly related to the differences in the merchandise's physical characteristics. DKSC used actual manufacturing costs from its accounting system to calculate conversion ratios and applied such ratios over monthly production quantities for each project. Id., at D-13, D-28, Exhibits D-13 and D-14, CD 11-12, PD 36. In other words, DKSC's conversion costs inherently were tied to what

6

was produced and how much was produced because projects with more sections—and therefore reflecting a greater quantity (weight) produced—may absorb more conversion costs. DKSC's reporting methodology reasonably reflected the costs to produce merchandise because it can be tied to finished goods production quantities.

      Plaintiff's proffered comparison of conversions costs, used to buttress its assertion that conversion costs cannot be tied to differences in physical characteristics, critically fails to consider the different physical characteristics of finished wind towers. See Pl. Br., at 7–8. Plaintiff's analysis compares conversions costs only to the number of sections for each tower, which is just <u>one</u> CONNUM characteristic out of the eleven enumerated physical characteristics upon which Commerce bases its AD duty calculations. Plaintiff thus fails to consider the widely varying height or weight characteristics of each tower, which are the two most significant physical characteristics of a wind tower. Plaintiff's "per-section" conversion cost analysis is intentionally distortive. Plaintiff's cherry-picked analysis merely shows that SEQU [ ] had the [ ] conversion costs because [ ] was produced. Id. Intuitively, where [ ] is produced, conversion costs would be less efficient to produce, thus resulting in [ ] conversion costs. Plaintiff's analysis actually reinforces the fact that wind towers are specialized products and cannot be compared to one other given the unique production quantities, physical characteristics, and total sections produced.

      In considering the other physical characteristics and production quantities, Plaintiff has failed to show any variance or distortion in DKSC's processing costs. Substantial evidence therefore supports Commerce's decision to rely on DKSC's reasonable conversion cost reporting methodology, which Commerce reached after a thorough examination of the height, weight, and number of sections in addition to the type characteristic, and which Commerce fully

7

and clearly articulated in its determination. See Decision Memo, at 11–12 ("we do not find that Dongkuk's per-unit average conversion costs fluctuate in a way that is unrepresentative of the differences in physical characteristics").

Finally, Plaintiff wrongly asserts that Commerce deviated from its standard practice in the underlying determination. See Pl. Br., at 5–6. The cases upon which the Plaintiff relied primarily involve the reallocation of direct material costs when cost variances are unrelated to the physical characteristics of the product. Id., at 3–8. Instead, Commerce's prior practice involving conversion cost reporting methodologies actually supports the reasonableness and lawfulness of its determination to accept DKSC's reported conversion costs particularly where, as here, they were based on the company's normal books and records. See, e.g., Carbon and Alloy Steel Threaded Rod from India, 88 Fed. Reg. 75,265 (Dep't Commerce Nov. 2, 2023) (final results 2021-22 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce Oct. 26, 2023), at cmts. 2 and 3; Dioctyl Terephthalate from the Republic of Korea, 82 Fed. Reg. 28,824 (Dep't Commerce June 26, 2017) (final determ.), and accompanying Issues and Decision Memorandum (Dep't Commerce June 19, 2017), at cmt. 11; Certain Steel Nails from Malaysia, 80 Fed. Reg. 28,969 (Dep't Commerce May 20, 2015) (final determ.), and accompanying Issues and Decision Memorandum (Dep't Commerce May 13, 2015), at cmt. 3.

In sum, Commerce reasonably considered the substantial evidence on the record for this complex cost reporting issue and correctly determined to rely on DKSC's reasonable, accurate, and non-distortive conversion cost reporting methodology. Remand is not warranted.

Case 1:25-cv-00104-LMG     Document 30     Filed 03/09/26     Page 14 of 19

Consol. Court No. 25-00104                                        Non-Confidential Version

### B. PLAINTIFF FAILS TO PROVIDE ANY LEGAL OR FACTUAL BASIS WHY COMMERCE'S DETERMINATION TO RELY ON DKSC'S CV PROFIT RATIO SHOULD BE REMANDED

Plaintiff incorrectly argues that Commerce departed from its standard practice when it used DKSC's information from the immediately preceding administrative review, under 19 U.S.C. § 1677b(e)(2)(B)(iii), as the basis for calculating CV profit for DKSC. See Pl. Br., at 26–32. Plaintiff's arguments are legally and factually incorrect and should be rejected by Commerce. By misapplying certain court precedent and ignoring the Commerce's practice, Plaintiff fails to Commerce acted unreasonably when it used DKSC's own, more accurate home market sales data rather than surrogate producers' financial data that were on the record. For the reasons explained below, Commerce's determination was reasonable, supported by substantial evidence, and in accordance with law.

Basically, this issue comes down to the fact that Plaintiff does not like Commerce's choice of source for purposes of calculating DKSC's CV profit and selling expenses and wants the Court to reach a different conclusion. But Plaintiff cannot escape the fact that Commerce's choice was reasonable and complied with the statutory alternative method under 19 U.S.C. § 1677b(e)(2)(B)(iii).

Specifically, Commerce selected the CV profit and selling expense ratios that it calculated in the immediately preceding 2021-2022 administrative review based on DKSC's own above-cost home market sales information, see Decision Memo, at 3–10, thus reflecting sales made in the foreign market in the ordinary course of trade. See Letter from Trade Pacific PLLC, "CV Profit and Selling Expense Comments and Information" (Aug. 23, 2024) ("DKSC CV Profit Info."), at Exhibit CV-1, CD 38, PD 62. DKSC's own information resembled, as closely as possible, the statutory preference for using the actual home market profit experience of the

9

Case 1:25-cv-00104-LMG   Document 30   Filed 03/09/26   Page 15 of 19

Consol. Court No. 25-00104                                    Non-Confidential Version

"specific exporter or producer being examined" in the present administrative review. 19 U.S.C. § 1677b(e)(2)(B)(i); see also Decision Memo, at 6 ("{DKSC's} profit experience best reflects its own business operations and products as it represents profit from wind towers produced by a Korean producer in Korea" and "best reflects the statutory preference, under section 773(e)(2)(A) of the Act, for calculating CV profit and selling expenses using the actual amounts incurred by the respondent.")

First, Plaintiff suggests that Commerce was Commerce restricted to using a respondent's information from the current period of review. See Pl. Br., at 13. But Plaintiff is reading qualifying language into the statute that does not exist.

Second, Plaintiff next contends that Commerce somehow "changed course and rooted its final decision" under statutory alternative (iii) based on a prior court holding. Id., citing Husteel Co., Ltd. v. United States, 471 F.Supp.3d 1349, 1365 (Ct. Int'l Trade 2020). But this decision applied only to the use of sales data under alternative method (ii), i.e., 19 U.S.C. § 1677b(e)(2)(B)(ii), through which Commerce looks to information from any other respondent being examined in that same review. That was not the situation in the underlying review at issue here. Plaintiff is mistaken and can cite no actual legal authority for its contentions.

In fact, Commerce frequently relies on a respondent's submitted sales data from the prior administrative review as a source for CV profit and selling expense information, which the courts have upheld. See, e.g., SeAH Steel Corporation v. United States, 513 F.Supp.3d 1367, 1398 (Ct. Int'l Trade 2021) (upholding as reasonable Commerce's use of respondent's data from the prior review as a source for CV profit and selling expense ratios); Certain Oil Country Tubular Goods from the Republic of Korea, 83 Fed. Reg. 17,146 (Dep't Commerce Apr. 18, 2018) (final results 2015-16 admin. rev.), and accompanying Issues and Decision Memorandum

Case 1:25-cv-00104-LMG     Document 30     Filed 03/09/26     Page 16 of 19

Consol. Court No. 25-00104                                       Non-Confidential Version

(Dep't Commerce Apr. 11, 2018), at cmt. 7 (using the mandatory respondent's sales data from the prior review as a source of CV profit and selling expenses); Magnesium Metal from the Russian Federation, 76 Fed. Reg. 56,396 (Dep't Commerce Sept. 13, 2011) (final results 2009-10 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce Sept. 6, 2011), at cmt. 1.B (relying on respondent's sales data from the prior review to calculate CV profit and selling expense ratios). As such, Commerce's practice confirms that contemporaneity alone is not a reason to rely on less accurate, surrogate financial statements from third-party companies when more specific data is available.

Third, Plaintiff incorrectly contends that because DKSC's FY 2022 financial statements reported a loss, DKSC was not profitable in selling wind towers in Korea, despite its home market sales data demonstrating otherwise. See Pl. Br., at 16. Plaintiff fails to recognize, however, that DKSC's FY 2022 financial statements demonstrate that a significant portion of its income and expenses relate to sales to Japan, China, the United States, and other markets, as well as from the sale of construction services. See DKSC's Section A Questionnaire Response (Dec. 15, 2023), at Exhibit A-15, CD 6-7, PD 28. Therefore, it was reasonable that Commerce rejected this line of argument. Commerce correctly found that DKSC made above-cost (i.e., profitable) home market sales during the 2021-2022 administrative review period and used such sales as the basis for calculating normal value, and in turn DKSC's weighted-average dumping margin, in that prior review. As such, Commerce reasonably concluded, based on substantial evidence, that DKSC's 2021-2022 home market sales data reflected the profit experience of producing and selling wind towers in Korea by the specific producer/exporter being examined.

Fourth, Plaintiff contends that DKSC's 2021-2022 home market sales cannot be used as a basis for CV profit and selling expenses based on its low volume of sales. See Pl. Br., at 17–18.

11

Case 1:25-cv-00104-LMG   Document 30   Filed 03/09/26   Page 17 of 19

Consol. Court No. 25-00104                                    Non-Confidential Version

In doing so, Plaintiff conflates "volume" of sales with the number of sales. It is well-established that Commerce considers viability to be based on a percentage "rather than the number of sales." Building Systems de Mexico, S.A. de C.V. v. United States, 609 F.Supp.3d 1369, 1375 (Ct. Int'l Trade 2022). There is no dispute that DKSC's home market was viable as a comparison market in the previous administrative review, otherwise, it never would have reported home market sales. Plaintiff observes that DKSC's CV ratios were derived from **[                    ]**, but it ignores the fact that DKSC only had **[   ]** home market sales in total during that review period. See DKSC CV Profit Info., at Exhibit CV-1, CD 38, PD 62. Put differently, DKSC's above-cost home market sales represented **[  ]** percent of its total home market sales. And based on the long lead time of wind towers, the number of reporting sales is typically low, but a relatively low number of sales does not equate to a lack of representativeness. See, e.g., Supp. QR Resp., at Appx I and II, CD 27, PD 54 (reporting 8 home market sales records and 3 U.S. sales records for the current review).

      Fifth, Plaintiff asserts that Commerce has a "well-established practice for selecting among potential proxies for CV ratios under Alternative (iii)." Pl. Br., at 13–14. In fact, Commerce's reasonable practice actually is to rely on less contemporaneous sources in favor of financial data with more compelling specificity. See, e.g., Atar S.R.L. v. United States, 730 F.3d 1320, 1323 (Fed. Cir. 2013) (using sales from other mandatory respondents in the prior administrative review to calculate surrogate profit and selling expense ratios); Welded Line Pipe from the Republic of Korea, 84 Fed. Reg. 27,762 (Dep't Commerce June 14, 2019) (final results 2016-17 admin. rev.), and accompanying Issues and Decision Memorandum (Dep't Commerce June 7, 2019), at cmt. 4 (relying on Hyundai's profit ratio and selling expense information from the first administrative review because the contemporaneous financial statements were

**Consol. Court No. 25-00104**                                                          Non-Confidential Version

incomplete and less specific to the subject merchandise); see also Home Products International, Inc. v. United States, 33 C.I.T. 1781, 1786-87, 675 F.Supp.2d 1192, 1197 (2009) (finding in a non-market economy context that it was reasonable for Commerce to rely on non-contemporaneous financial data where the contemporaneous financial data was inaccurate and less reliable).

For all these reasons, Commerce's decision to select DKSC's own above-cost home market sales data as the basis for calculating CV profit and selling expenses in the underlying administrative review was reasonable, supported by substantial evidence, and in accordance with 19 U.S.C. § 1677b(e)(2)(B)(iii).

## IV.   CONCLUSION

DKSC respectfully submits that the Court should reject the challenges raised in Plaintiff's Rule 56.2 Memorandum and sustain Commerce's Final Results.

          Respectfully submitted,

          /s/ Jarrod M. Goldfeder
          Jarrod M. Goldfeder
          MacKensie R. Sugama

          **TRADE PACIFIC PLLC**
          700 Pennsylvania Avenue, SE
          Suite 500
          Washington, D.C. 20003
          (202) 223-3760

Dated: March 9, 2026                      *Dongkuk S&C Co., Ltd.*
          *Defendant-Intervenor*

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| WIND TOWER TRADE COALITION,<br><br>               Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>               Defendant,<br><br>    and<br><br>DONGKUK S&C CO. LTD.,<br><br>               Defendant-Intervenor. | Before: Hon. Leo M. Gordon,<br>Senior Judge<br><br>Court No. 25-00104 |

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that the accompanying Response of Dongkuk S&C Co., Ltd. ("DKSC") in Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, dated November 10, 2025, complies with the word-count limitation described in the Court's Amended Scheduling Order.  See ECF No. 26.  This response brief contains <u>3,648 words</u> according to the word-count function of the word-processing software used to prepare the brief, excluding the table of contents, table of authorities, and counsel's signature block.

                                                Respectfully submitted,

                                                /s/ Jarrod M. Goldfeder
                                                Jarrod M. Goldfeder
                                                **TRADE PACIFIC PLLC**
                                                700 Pennsylvania Avenue, SE
                                                Suite 500
                                                Washington, D.C.  20003
                                                (202) 223-3760

Dated:  March 9, 2026                               *Counsel to Dongkuk S&C Co., Ltd.*
                                                                     *Defendant-Intervenor*